Lois E. BAIRD, etc., Plaintiff,

v.

**GENERAL MOTORS CORPORATION, Defendant.**

No. C84–2874A.

United States District Court, N.D. Ohio, E.D.

Oct. 31, 1986.

---

Timothy F. Scanlon, Scanlon & Gearinger Co., L.P.A., Akron, Ohio, for plaintiff.

Owen L. Heggs, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for defendant.

## MEMORANDUM OPINION

DOWD, District Judge.

Before the Court is the motion of the defendant, General Motors Corporation, for partial summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. The plaintiff, Lois E. Baird, has responded. The parties have supplemented their motions with affidavits and other documents, and with additional legal briefs. For the reasons that follow, the motion is granted.

## I.

On August 12, 1982, William C. Baird II, the decedent of the plaintiff, was driving a 1979 Pontiac Grand Am on a public highway in Summit County, Ohio. The automobile veered off the highway and struck a tree. The collision resulted in the death of the plaintiff's decedent.

The plaintiff has brought a survival action on behalf of herself, her children, and other next of kin. She claims that the automobile driven by the decedent was in a defective condition and unreasonably dangerous to the user at the time the defendant manufactured it. The plaintiff has requested damages in the amount of $3 million as compensation for the loss of the plaintiff's decedent.

The plaintiff's products liability action is predicated on three bases. First, the plaintiff claims that the automobile's axle was defective, and the defect caused the automobile to veer off the road and strike the tree. Second, the plaintiff contends that the seat belt restraint system installed in the automobile was defective, and this defect caused the decedent to suffer the fatal injuries. Third, the plaintiff contends that the automobile was defective because the defendant failed to equip it with air bags.

## II.

The defendant has moved for summary judgment on the plaintiff's third products liability theory, which alleges that the automobile was defective because the defendant failed to equip it with air bags. The defendant contends that the National Traffic and Motor Vehicle Safety Act, 15 U.S.C. §§ 1381–1420 (1982 & Supp. III 1985) (as amended), preempts the plaintiff's air bag products liability theory. The defendant argues that the express language of the statute preempts state tort action contemplated by the plaintiff. In the alternative, the defendant argues that the statute impliedly preempts the state court action because allowing the recovery of damage awards under state law conflicts with the statutory scheme.

The Court's preemption analysis begins with the assumption that the federal law does not displace existing state law. *See Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2128, 68 L.Ed.2d 576 (1981) (citing *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). A federal law may, however, preempt state law in one of three ways. First, Congress may include specific language in the statute that expressly preempts state law. Second, despite the absence of express preemptive language, the statutory language may evidence Congress' intent to occupy completely a regulatory field. Third, in situations where the statutory language does not totally

preempt state law, federal law preempts state law if the state law actually conflicts with federal law. Actual conflict exists when it is impossible to comply with both state and federal law, or when the state law frustrates the accomplishment of Congress' purposes and objectives in enacting the legislation.[1] *See Michigan Canners & Freezers Association v. Agricultural Marketing and Bargaining Board,* 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984).

## A.

The defendant first argues that Congress expressly preempted all state law relating to safety standards for automobiles by enacting the National Traffic and Motor Vehicle Safety Act, 15 U.S.C. §§ 1381–1420 (1982 & Supp. III 1985) (as amended). The defendant contends that the express language of 15 U.S.C. § 1392(d) evidences Congress' intent to prohibit the states from developing safety standards independent from those contained in the Act. The defendant also argues that the state regulations preempted by § 1392(d) include implicit regulation based on common law tort liability. *Cf. San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 246–47, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959) (regulation by state includes damages awards because damages awards are designed to influence conduct).

Section 1392(d) provides that:

[w]henever a Federal motor vehicle safety standard established under this subchapter is in effect, no state or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard.

15 U.S.C. § 1392(d) (1982).[2] At least two courts have held that the language of § 1392(d) expressly preempts a state tort action based on the failure to install air bags in a vehicle. *See Vanover v. Ford Motor Co.,* 632 F.Supp. 1095, 1096–97 (E.D. Mo.1986); *Cox v. Baltimore County,* 546 F.Supp. 761, 763 (D.Md.1986). Section 1397(c), however, expressly provides for the continuation of common law liability: "Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law." 15 U.S.C. § 1397(c) (1982). Reading these two sections of the statute in conjunction, it is clear that Congress did not intend to preempt common law liability when it established uniform national safety standards. *See, e.g., Dawson v. Chrysler Corp.,* 630 F.2d 950, 958 (3rd Cir.1980) (compliance with national automobile safety standards does not relieve liability because of specific language of § 1397(c)), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981)); *Larsen v. General Motors Corp.,* 391 F.2d 495, 506 (8th Cir. 1968) (national automobile safety standards supplement, and do not displace, common law theories of negligence and products liability).

■ The plaintiff's claim is based on common law products liability. The preemptive language contained in § 1392(d) forecloses the states from implementing their own automobile safety regulations. The statutory language does not, however, directly address the state common law, and thus does not provide for express preemption of state common law claims. *Cf. Cipollone v. Liggett Group, Inc.,* 789 F.2d 181, 185 (3rd Cir.1986) (failure of preemptive language in Federal Cigarette Labeling and Advertising Act to include express

---

**1.** The defendant has indicated in its brief that it does not contend that Congress, in enacting the National Traffic and Motor Vehicle Safety Act, intended to occupy the entire field of automobile safety regulation.

**2.** Congress amended § 1392(d) in 1982 to authorize the states to enforce any safety standard identical to a federal safety standard. *See Juvenile Prods. Mfrs. Ass'n v. Edmisten,* 568 F.Supp. 714, 717–18 (D.N.C.1983).

reference to state common law claims mandated against finding of express preemption); *Ferebee v. Chevron Chemical Co.,* 736 F.2d 1529, 1542 (D.C.Cir.) (statutory language did not explicitly refer to state damage actions so statute did not expressly preempt), *cert. denied,* 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984). In addition, Congress' express inclusion in the statute of § 1397(c), which continues common law liability, suggests that the Court should read the preemptive language of § 1392(d) narrowly. Accordingly, the Court finds that Congress did not expressly preempt the plaintiff's common law products liability action based on the defendant's failure to install air bags in the automobile.[3]

### B.

The defendant argues in the alternative that even if the statute does not expressly preempt the plaintiff's claim, allowing the plaintiff to proceed with the common law action based on products liability will frustrate the purposes of the Act. The defendant notes that the regulations promulgated under the authority of the National Traffic and Motor Vehicle Safety Act pertaining to

occupant crash safety authorize automobile manufacturers to choose one of three different methods to comply with the minimum safety standards for occupant crash protection. *See* 49 C.F.R. § 571.208 (1979).[4] A manufacturer of an automobile may comply with the regulatory minimum by providing a complete passive protection system, a head-on protection system, or a lap and shoulder belt protection system with belt warranty. *Id.* § 571.208, S4.1.2.[5] The defendant's argument, in essence, is that the existence of an independent state court action based on products liability for the failure of the manufacturer to include air bags in the design of the vehicle effectively negates the choice of crash protection standards provided by the regulations. The defendant contends that if faced with the possibility of liability for the failure to install air bags in the automobiles, automobile manufacturers will have no choice but to abandon the installation of lap and shoulder belt protection, a federally approved option, and install air bags in all motor vehicles.[6]

The Court finds that the National Traffic and Motor Vehicle Safety Act preempts the plaintiff's common law claims

---

**3.** In *Cipollone,* the Court decided that the Federal Cigarette and Advertising Labeling Act did not expressly preempt the plaintiff's common law claim based on products liability. The Court noted that the statute's preemption provision did not include a specific reference to state common law as other statutes have. *See Cipollone,* 789 F.2d at 185 n. 5 (citing, for example, 29 U.S.C. § 1144(a), (c)(1), the Employee Retirement Income Security Act of 1974). The *Cipollone* court found no express preemption despite the absence of a savings clause in the statute preserving state common law claims. As the Court has noted, the National Traffic and Motor Vehicle Safety Act contains an express savings clause preserving the vitality of state common law liability. *See* 15 U.S.C. § 1397(c).

**4.** The defendant points out that the actual safety standards contained in § 571.208 have not changed since 1979. *Compare* 49 C.F.R. § 571.208 (1979) *to id.* § 571.208 (1985).

**5.** Apparently, the first option—complete passive protection system—would require the manufacturer to install air bags designed to protect the occupant from both frontal and lateral impact. *See* 49 C.F.R. § 570.208, S4.1.2.1 (1979). The second option—head-on passive protection sys-

tem—would require the manufacturer to provide air bags sufficient to protect the occupant from injury resulting from frontal crash only, and provide lateral protection by other means. *See id.* § 571.208, S4.1.2.2. The third option—lap and shoulder belt protection system and seat belt warning—would require the manufacturer to protect the occupant from frontal and lateral impact solely by means of lap and shoulder belt apparatus. *See id.* § 571.208, S4.1.2.3.

**6.** The defendant argues that the plaintiff's claim is preempted because it conflicts with federal law in the sense that it frustrates the purpose of the federal law, and not in the sense that it is impossible to comply with both state and federal law. *See* Defendant General Motors Corporation's Motion for Partial Summary Judgment at 13 n. 13. The defendant suggests, however, that although compliance with future non-identical state and federal laws regarding passive restraints might be possible, compliance with respect to the millions of vehicles already sold will be virtually impossible. The Court is not basing its decision on the impossibility of dual compliance.

based on products liability. Congress passed the Act to "reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents." 15 U.S.C. § 1381 (1982). To achieve this purpose, Congress authorized the Secretary of Transportation to promulgate federal safety standards that are "practicable [and] meet the need for motor vehicle safety." *Id.* § 1392(a). With respect to standards for occupant crash protection, the Secretary promulgated a regulation that allows manufacturers to choose one of three occupant crash protection safety options. The Secretary decided to allow automobile manufacturers to comply with the safety standard in one of three ways in order to encourage the automobile industry to continue to develop occupant crash safety systems:

> By issuing a performance standard rather than mandating the specific use of one device such as air bags or prohibiting the use of specific devices such as nondetachable belts, the Department believes that it will provide sufficient latitude for industry to develop the most effective systems. The ability to offer alternative devices should enable the manufacturers to overcome any concerns about public acceptability by permitting such public choice ... This approach also has the advantage of not discouraging the development of other technologies.
>
> .    .    .    .    .
>
> By encouraging the use of such alternatives to automatic belts through this rulemaking, the Department expects that more effective and less expensive technologies will be developed.

49 Fed.Reg. 28,862, 28,997 (1984). Thus, the intent of the regulatory scheme is to provide flexibility in the development of technologies to improve automotive safety.

Judicial decisions constitute a form of state regulation. *See, e.g., San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 246–47, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959) (regulation by state in-cludes damages awards because damages awards are designed to influence conduct). Court decisions that create common law liability for a manufacturer's failure to install the air bag option in an automobile will effectively force automobile manufacturers to choose the air bag option over other statutorily approved options. An automobile manufacturer faced with the prospect of choosing the air bag option, or facing potential exposure to compensatory and punitive damages for failing to do so, has but one realistic choice. A court decision that removes the element of choice authorized in the occupant crash safety regulations will frustrate the statutory scheme. *See Vanover v. Ford Motor Co.,* 632 F.Supp. 1095, 1096–97 (E.D.Mo.1986); *Cox v. Baltimore County,* 646 F.Supp. 761, 764 (D.Md.1986).[7]

The Court's conclusion is supported by Congress' explicit pronouncement that occupant protection standards may not require the installation of air bags in automobiles. In 1974, Congress amended the National Traffic and Motor Vehicle Safety Act to provide that

> no Federal motor vehicle safety standard respecting occupant restraint systems may—
>
> (A) have the effect of requiring, or
>
> (B) provide that a manufacturer is permitted to comply with such standard by means of,
>
> an occupant restraint system other than a belt system.

15 U.S.C. § 1410b(b)(2) (1982). The amendment specifically authorized the regulations issued by the Department of Transportation regarding occupant crash protection safety standards. *See id.* § 1410b(b)(3)(A); *see also* 49 C.F.R. § 571.-208 (1979). Thus, Congress has expressly approved the right of an automobile manufacturer to choose one of the three options available for compliance with Federal Motor Vehicle Safety Standard No. 208. Accordingly, the Court finds that the National

---

**7.** The Court notes that claims such as the plaintiff's might also frustrate the achievement of a uniform national vehicle safety scheme. *See Cox,* 646 F.Supp. at 764.

Traffic and Motor Vehicle Safety Act preempts the plaintiff's state common law tort action claiming that the defendant defectively designed its automobile by failing to install air bags for occupant crash protection.

### III.

For the foregoing reasons, the Court grants the defendant's motion for partial summary judgment on plaintiff's claim based on the defendant's failure to install air bags in the 1979 Grand Am.

IT IS SO ORDERED.