Arnold SHORTER, et al., Plaintiffs,

v.

CHAMPION HOME BUILDERS CO., et al., Defendants.

No. 4:90 CV 2032.

United States District Court, N.D. Ohio, E.D.

Sept. 16, 1991.

**334**

Todd M. Kwait, Steven M. Weiss, Weiss, Kwait & Associates, Cleveland, Ohio, for plaintiffs Arnold Shorter, Alice Shorter, Aaron Shorter and Alex Shorter.

James H. Crawford, Albert J. Rhoa, Rhoa, Follen & Rawlin, Cleveland, Ohio, for defendant cross-defendant and cross-claimant Champion Home Builders Co.

Walter R. Matchinga, Quandt, Giffels, Buck & Rodgers, Cleveland, Ohio, for defendant Willamette Industries, Inc.

Gary D. Hermann, James S. Cahn, Donna D. Singerman, Hermann, Cahn & Schneider, Cleveland, Ohio, for defendant cross-claimant and cross-defendant Pat & Petes' Mobile Home Sales, Inc.

## MEMORANDUM OPINION

DOWD, District Judge.

### I. INTRODUCTION

This Memorandum Opinion will resolve defendant Champion Home Builders Co.'s [hereinafter "Champion Home"] motion for summary judgment, (Docket No. 54), plaintiffs' motion for partial summary judgment, (Docket No. 61), plaintiffs' motion to strike Champion Home's exhibits attached to the motion for summary judgment, (Docket No. 60), plaintiffs' motion to file a response to Champion Home's reply to plaintiffs' motion for summary judgment, (Docket No. 83), Champion Home's motion to strike plaintiffs' cross motion for summary judgment, (Docket No. 77), and Champion Home's motion for summary judgment on the cross-claim by defendant Pat & Petes Mobile Home Sales for indemnification, (Docket No. 54).

### A. FACTUAL SETTING

The present suit is brought by plaintiffs Arnold Shorter, Alex Shorter, Aaron Shorter, and Alex Shorter against Champion Home Builders, Williamette Industries, and Pat & Petes' Mobile Home Sales. The plaintiffs claim that the mobile home they purchased from Pat & Petes' Mobile Home Sales contained dangerous levels of formaldehyde which caused severe respiratory and allergic reactions.

Jurisdiction is based on diversity. The plaintiffs are all residents of Ohio. Defendant Champion Home Builders [hereinafter "Champion Home"], the manufacturer of the mobile home, is a resident of Michigan. Defendant Williamette Industries, the manufacturer of the particleboard flooring in the mobile home, is a resident of Oregon. Defendant Pat & Petes Mobile Home Sales, the retailer who sold the mobile home to the plaintiffs', is a resident of Pennsylvania.

Plaintiffs Arnold Shorter and Alice Shorter purchased the mobile home from defendant Pat & Petes' Mobile Home Sales and began living in the mobile home, with their minor son, Aaron Shorter, in October of 1986, and later with their son Alex Shorter, born in January of 1988.

Plaintiffs allege that while residing in the mobile home they experienced:

"various medical problems including but not limited to eye irritation, throat irritation, headaches, lethargy, runny noses, congestion, inflamed nasal passages, wheezing, asthmatic symptoms, flu-like symptoms, and emotional harm."

Plaintiffs further allege that these symptoms were the direct result of high levels of formaldehyde in the mobile home that were being emitted from the particleboard flooring.

Plaintiffs also claim that each defendant was aware of the high levels of formaldehyde in the mobile home but failed to warn plaintiffs of this possible health risk. Plaintiffs assert that the levels of formaldehyde and the failure to warn amount to negligence on the part of the defendants.

## II.  CHAMPION HOME'S MOTION FOR SUMMARY JUDGMENT

Champion Home has moved for summary judgment on the plaintiff's products liability claim and on the claim of fraud under the Ohio Consumers Sales Practices Act.[1] Champion Home argues that the National Manufactured Housing Construction and Safety Standards Act of 1974, 42 U.S.C. §§ 5401–5426 [hereinafter "NMHCSSA"], preempts the plaintiffs' state law claims. With regards to the claim under the Ohio Consumers Sales Practices Act, Champion Home also argues that the statute is not applicable to it because the conduct in question occurred outside of the state of Ohio.

### 1.  *Discussion*

#### a.  Summary Judgment Standard

It is well established that when considering a motion for summary judgment pursu-

ant to Rule 56 of the Federal Rules of Civil Procedure, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion."  *U.S. v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *United States v. Hodges X–Ray, Inc.,* 759 F.2d 557 (6th Cir.1985); *Tee–Pak, Inc. v. St. Regis Paper Co.,* 491 F.2d 1193 (6th Cir.1974); *Bohn Aluminum & Brass Corp. v. Storm King Corp.,* 303 F.2d 425 (6th Cir.1962).  However, the non-moving party bears the responsibility to demonstrate that summary judgment is inappropriate under Rule 56(e).  The "adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his] response, by affidavits or otherwise . . ., must set forth specific facts showing there is a genuine issue for trial.  If [he] does not so respond, summary judgment, if appropriate, shall be entered against [him]."  Fed.R.Civ.P. 56(e).

A court may grant summary judgment only if there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R.Civ.P. 56(c).  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Id.* (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)). Therefore, "[i]f the evidence is merely colorable, . . ., or is not significantly probative, summary judgment may be granted."  *Id.* at 249–250, 106 S.Ct. at 2510–11 (citing

---

**1.**  The Court will also consider plaintiffs' motion for partial summary judgment, (Docket No. 61),  since the two are factually related.

*Dombrowski v. Eastland,* 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) (*per curiam* ); *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. at 290, 88 S.Ct. at 1593). " 'The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.' " *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir.1989) (quoting *Anderson v. Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512)). Moreover, summary judgment is appropriate when the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53 (1986).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

### b. Preemption

■ Champion Home first argues that federal law preempts the plaintiffs' state law claims. Specifically, Champion Home argues that the National Manufactured Housing Construction and Safety Standards Act preempts any state law tort claim regarding mobile housing.

The general rule is that federal law does not displace existing state law. Preemption is the exception to this rule. As the Court in *Michigan Canners & Freezers Ass'n. v. Agricultural Marketing and Bargaining Board,* 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984) noted:

> [f]ederal law may pre-empt state law in any of three ways. First, in enacting the federal law, Congress may explicitly define the extent to which it intends to pre-empt state law. Second, even in the absence of express pre-emptive language,

Congress may indicate an intent to occupy an entire field of regulation, in which case the States must leave all regulatory activity in that area to the Federal Government. Finally, if Congress has not displaced state regulation entirely, it may nonetheless pre-empt state law to the extent that the state law actually conflicts with federal law. Such a conflict arises when compliance with both state and federal law is impossible, or where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." (*quoting Hines v. Davidowitz,* 312 U.S. 52, 67 [61 S.Ct. 399, 404, 85 L.Ed. 581] (1941)) (balance of citations omitted).

*See also California Federal S. & L. Assn. v. Guerra,* 479 U.S. 272, 107 S.Ct. 683, 93 L.Ed.2d 613 (1986); *Louisiana Public Service Comn. v. F.C.C.,* 476 U.S. 355, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986); and *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984).

The statute in question, NMHCSSA, states that if plywood or particleboard made of phenol-formaldehyde resin is used in the construction of a mobile home, the product must comply with certain emission standards. These standards are determined by the United States Department of Housing and Urban Development [hereinafter "HUD"]. Currently, these standards require that formaldehyde emission not exceed 0.2 parts per million (ppm) from plywood and .03 ppm from particleboard as measured by a specified air chamber test. 24 C.F.R. 3280.308.

As part of the regulatory scheme, HUD also requires that the manufacturer post a detachable warning to each manufactured home. This warning, illustrated in Exhibit A of Champion Home's brief, informs the purchaser that materials used in the manufacture of the home emit formaldehyde, and warns the purchaser of the health risks associated with formaldehyde emissions. 24 C.F.R. 3280.309(a). Manufacturers are also required to include a copy of this warning in the owner's manual. 24 C.F.R. 3280.309(d).

Champion Home argues that because it complied with the HUD requirements, the product is not defective as a matter of law, and, this Court should grant summary judgment in its favor. To support its argument for preemption, Champion Home cites a provision of the Act which reads:

Whenever a Federal manufactured home construction safety standard established under this chapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any manufactured home covered, any standard regarding construction or safety applicable to the same aspect of performance of such manufactured home which is not identical to the Federal manufactured home construction and safety standard.

42 U.S.C. § 5403(d). Champion Home asserts that this language illustrates Congressional intent to preempt state law in the area of mobile home manufacture.

In opposition to preemption, plaintiffs argue [2] that instead of preempting state common law, the express intent of Congress was to permit state law actions. Specifically, plaintiffs cite a separate provision of the Act which reads:

(c.) Compliance with any Federal Manufactured Home Construction or Safety Standard issued under this chapter does not exempt any person from any liability under common law.

42 U.S.C. § 5409(c). Plaintiffs argue that "[h]ere, Congress made it clear that even compliance with a mobile home standard will *not* bar common law actions." (Plaintiffs brief at 3) (emphasis original).

The two relevant provisions in the NMHCSSA noted by counsel, seem to be contradictory, both allowing and forbidding state law claims. This Court has previously resolved a similar inconsistency. In *Baird v. General Motors Corp.*, 654 F.Supp. 28 (N.D.Ohio 1986) [3], the Court was faced with two similar provisions in the National Traffic and Motor Vehicle Safety Act [hereinafter "NTMVSA"].[4] The Act allowed car manufacturers to choose between installing air bags, lap belts, or other passive restraint devices. Following a serious car accident, plaintiff brought a state tort claim against General Motors for failing to install an air bag in his car which had lap belts. The Court held that the two provisions (15 U.S.C. §§ 1392(d) and 1397(c)) read together indicated that Congress did not expressly or implicitly wish to preempt most state law claims.

The Court did, however, find that Congress had acted to prevent states from developing their own standards. Thus, while states could not set their own standards, state law claims were still available.

In *Baird*, the Court held that the NTMVSA preempted the particular products liability claim that the plaintiff brought. The Court reasoned that the state law claim would frustrate the purpose of the federal act. In reviewing the legislative history of the Act, the Court found that its purpose was to reduce the number of traffic accidents while still allowing the manufacturers the flexibility of choosing the most cost efficient form of safety device. The plaintiff's claim would effectively eliminate this flexibility by forcing the manufacturers to install only air bags. As a result, a primary purpose of the federal act would be frustrated.

As the Court found in *Baird*, the two provisions when read together preempt state law standards, but do not preempt

---

**2.** Plaintiffs also argue that Champion Home waived its right to raise preemption as a defense because it was not raised until summary judgment. Plaintiff argue that preemption is an affirmative defense that must be raised in the answer. The Court need not address this argument because it granted Champion Home leave to amend its answer to include the preemption defense.

**3.** *Baird* was cited by both parties and has been favorably cited by other courts. *See Pokorny v. Ford Motor Co.,* 902 F.2d 1116 (3d Cir.1990); and *Kelly v. General Motors Corp.,* 705 F.Supp. 303 (W.D.LA 1988).

**4.** *See* 15 U.S.C. § 1392(d) and § 1397(c). Section 1392(d) prohibits states from establishing safety standards for motor vehicles. Section 1397(c) states that compliance with the act does not absolve a person of common law liability.

most state law claims. Thus, while the state of Ohio may not institute its own safety standards, state law claims may still be brought. In this case the Court finds that, unlike *Baird,* the state law claim does not frustrate the purpose of the NMHCSSA. The purpose of the NMHCSSA, as set out in 42 U.S.C. § 5401, reads:

> to reduce the number of personal injuries and deaths and the amount of insurance costs and property damage resulting from manufactured home accidents and to improve the quality and durability of manufactured homes.

The Court cannot find, nor has Champion Home offered, any evidence in the legislative history of the Act that would suggest that a state law claim would frustrate the intent of Congress in reducing personal injuries in mobile homes. If anything, the availability of additional state law claims may serve to further reduce the number of personal injuries. *See Larsen v. GM Corp.,* 391 F.2d 495, 506 (8th Cir.1968) where the Court found that the federal act actually supplemented the state common law.

■ Thus, the Court finds that plaintiffs' state law tort claim is not preempted by federal law. Compliance with the NMHCSSA standard will be treated as one piece of evidence going toward the issue of design defect. *See Ferebee v. Chevron Chemical Co,* 736 F.2d 1529, 1540 (D.C.Cir. 1984) (the court held that the EPA standard "may be taken into account by the jury ... but absent preemption the jury need not give that determination conclusive weight"). For this reason, the plaintiffs' motion for partial summary judgment on the issue of design defect is also denied.[5]

■ Additionally, neither party is entitled to summary judgment on the state court claim because there exists a genuine

issue as to proximate cause. The expert witnesses disagree as to the cause of plaintiffs' medical ailments. *See* Affidavits of Dr. Charles Jordan and Dr. Gots.

### c. Ohio Consumer Sales Practices Act

■ Champion Home also argues that it is entitled to summary judgment on the plaintiffs' claim under the Ohio Consumer Sales Practices Act found at O.R.C. § 1345.01 et seq. *et seq.* This statute prevents a supplier from engaging in "unfair or deceptive act[s] or practice[s] in connection with a consumer transaction." Plaintiffs' claim that Champion Home knew about the formaldehyde levels but failed to warn them about the dangers.

Champion Home first argues that the Consumer Sales Practices Act is not applicable to them because none of the transactions involving the manufacture or sale of the mobile home took place in Ohio. Champion Home notes that it is uncontested that the manufacture, negotiations, and sale of the home all took place in Pennsylvania. Plaintiffs' argue that the statute is applicable because the plaintiffs are Ohio residents and Ohio has an interest in protecting consumers in its state from unscrupulous business practices.

Section 1345.04 of the Consumer Sales Practices Act limits the subject matter jurisdiction. It states:

> The courts of common pleas, and municipal or county courts within their respective monetary jurisdiction, have jurisdiction over any supplier with respect to any act or practice *in this state* covered by sections 1345.01 to 135.13 of the Revised Code, or with respect to any claim arising from a consumer transaction subject to such sections. (emphasis added).

---

5. Even if this Court were to find preemption, summary judgment would not be appropriate because there remains a genuine issue as to whether or not the mobile home actually complies with the federal emissions standards. Champion Home relies on the certification of the mobile home at the time of purchase, and plaintiffs rely on an expert witness who calcu-

lates that the formaldehyde levels exceeded the allowed amount.

Also, in light of this ruling, Champion Home's motion to strike plaintiffs' cross-motion for summary judgment, and plaintiffs' motion for leave to file a response to Champion Home's reply to plaintiffs' motion for partial summary judgment are rendered moot.

The language "in this state" clearly indicates that the statute is only applicable if the offending conduct took place within the territorial boarders of the state of Ohio.

Ohio case law is in agreement. In *Brown v. Malket Developers*, 41 Ohio Misc. 57, 322 N.E.2d 367 (1974), the court held that the statute was applicable against an Ohio supplier even though the consumer was not from Ohio. The court noted that it is the activity of the supplier that is determinative. Also, in *Brown v. Liberty Clubs*, 45 Ohio St.3d 191, 543 N.E.2d 783 (1989), the court found an Indiana seller liable to an Ohio consumer under the Act. The seller had sent the consumer a brochure informing the plaintiff that he had won a prize. When the plaintiff answered the correspondence, he found that he had won a set of steak knives but was required to listen to a high pressure sales pitch on property located outside the state. The court held that the out of state defendant was liable because the solicitation of the brochure and the transfer of the "free" steak knives constituted a commercial transaction that occurred within the borders of Ohio. As Champion Home notes, the manufacture, negotiations, and sale all transpired in the state of Pennsylvania. Thus, the activity that plaintiffs point to all took place beyond the borders of Ohio.

Plaintiffs mistakenly rely on *Potter v. Dangler Mobile Homes*, 61 Misc. 14, 15 Ohio Op.3d 329, 401 N.E.2d 956 (1977). In *Potter*, the court found an Indiana mobile home manufacturer and an Ohio retailer liable under the statute to an Ohio consumer. In *Potter*, as in *Brown v. Liberty Clubs*, the actual transaction, namely the sale, took place in Ohio. Again, *Potter* can be distinguished from the present case because the sale in this case did not occur in Ohio.

As a result, the Court grants the defendant's motion for summary judgment on the issue of liability under the Ohio Consumer Sales Practices Act.[6]

## III. CHAMPION HOME'S SUMMARY JUDGMENT MOTION AGAINST DEFENDANT PAT & PETES MOBILE HOME SALES

Champion Home also moves for summary judgment on defendant Pat & Petes Mobile Home Sales' cross claim for indemnification in the event that plaintiffs prevail on the products liability claim. This motion is summarily denied.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Champion Home's motion for summary judgment on the state law tort claim, as well as the plaintiffs' motion for partial summary judgment. This Court hereby grants Champion Home's motion for summary judgment on the statutory claim under the Ohio Consumer Sales Practices Act. Further, the Court denies Champion Home's motion for summary judgment on defendant Pat & Petes Mobile Home Sales' cross-claim for indemnification.

IT IS SO ORDERED.

---

**6.** The Court also denies the plaintiffs' motion to strike the defendant's exhibits contained in their motion for summary judgment because the motion was moot as to the tort claim, and the exhibits were not relied upon in resolving the claim under the Ohio Consumer Sales Practices Act.