**Gale, Wanda, Travis and Canin MIZNER, Plaintiffs/Appellants,**

v.

**NORTH RIVER HOMES, INC. and Cape Mobile Home Mart, Inc., d/b/a Champion Homes of America, Defendants/Respondents.**

No. 66983.

Missouri Court of Appeals, Eastern District, Division Two.

May 30, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 27, 1995.

Case Transferred to Supreme Court Sept. 19, 1995.

Case Retransferred to Court of Appeals Jan. 23, 1996.

Original Opinion Reinstated Feb. 5, 1996.

Walters Bender & Strohbehn, P.C., Kip D. Richards, Kansas City, for appellants.

Phillips & Phillips, Patrick J. Phillips, Don V. Kelly, St. Louis, for North River Homes, Inc.

Anderson & Gilbert, Joel D. Monson, St. Louis, for Cape Mobile Home Mart, Inc.

PUDLOWSKI, Judge.

This is an appeal from a dismissal of plaintiffs' claims for damages in strict products liability and negligence for injuries resulting from their exposure to formaldehyde gas in their mobile home. The motion court dismissed plaintiffs' state law claims on the basis that a regulation issued by the Secretary of Housing and Urban Development (HUD) preempted them. We reverse and remand because Congress expressed a clear intent that such regulations should not affect common law damage suits.

Plaintiffs purchased a mobile home from defendant Cape Mobile Home Mart, Inc., in Cape Girardeau, Missouri, in June of 1990. This mobile home was manufactured in Alabama by defendant North River Homes, Inc. Plaintiffs moved the mobile home from the dealership in Cape Girardeau to Franklin County, Missouri. Plaintiffs, a family of four, lived in the mobile home as their permanent residence from June of 1990 through April of 1993.

Plaintiffs allege that the particle board, cabinets, paneling, carpeting, carpet padding, and insulation contained urea-formaldehyde resins, adhesives, and bonding agents which emitted toxic formaldehyde gas into the interior of their mobile home. They allege that this gas caused nausea, headaches, vomiting, breathing difficulties, and other effects upon their neurological, respiratory, and immune systems. They brought suit in the St. Louis City Circuit Court, alleging numerous

grounds for relief. Prior to the hearing on defendants' motion to dismiss plaintiffs' first amended petition, plaintiffs voluntarily dismissed all counts except three: Count II, strict liability for manufacturing and selling an unreasonably dangerous and defective product; Count IV, strict liability for failure to warn of the dangerous condition; and Count VI, negligence for failure to use reasonable care in the design, manufacture, testing, and inspection of the mobile home and its components.

 The circuit court dismissed the remaining three counts on the basis that they were preempted by federal law. The sole question on appeal is whether state law damage claims for strict liability and negligence are preempted by HUD regulations promulgated under 42 U.S.C.A. §§ 5401—5426 (1983), the National Manufactured Housing Construction and Safety Standards Act of 1974 (Manufactured Home Act). 24 CFR § 3280.308 establishes maximum formaldehyde emission levels for plywood and particleboard materials in manufactured homes. 24 CFR § 3280.309 requires manufacturers to place a health notice about formaldehyde in every manufactured home's kitchen.

 The intent of Congress is the primary issue in determining the preemptive effect of federal law. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 515, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992). Federal law does not preempt areas of traditional state law unless that is " 'the clear and manifest purpose of Congress.' " *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 664, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387 (1993), *quoting Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). The best evidence of Congress' intent is the plain wording of any express preemption clause in the statute. *CSX,* 507 U.S. at 664, 113 S.Ct. at 1737. If an express provision is present, the language of that provision usually controls, yet implied preemption is still possible if an actual conflict with state law is demonstrated. *Freightliner*

*Corporation v. Myrick,* —— U.S. ——, —— – ——, 115 S.Ct. 1483, 1487–88, 131 L.Ed.2d 385 (1995).

 In the instant case, the Manufactured Home Act contains two preemption provisions.[1] The first, § 5403(d), indicates that state law standards which differ from federal standards are generally preempted:

> Whenever a Federal manufactured home construction and safety standard established under this chapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any manufactured home covered, any standard regarding construction or safety applicable to the same aspect of performance of such manufactured home which is not identical to the Federal manufactured home construction and safety standard.

42 U.S.C.A. § 5403(d) (1983). However, the second preemption provision, § 5409(c), indicates that compliance with federal standards does not affect common law:

> Compliance with any Federal manufactured home construction or safety standard issued under this chapter does not exempt any person from any liability under common law.

42 U.S.C.A. § 5409(c). To interpret the effect of these provisions, we must construe them narrowly in light of the presumption against preemption of state police powers. *Cipollone,* 505 U.S. at 517, 112 S.Ct. at 2618. If the express language does not clearly preempt state law, then we must ascertain whether plaintiffs' common law actions actually conflict with federal law and whether plaintiffs' lawsuit frustrates the accomplishment and execution of the full purposes and objectives of Congress. *Freightliner, supra* at —— – ——, 115 S.Ct. at 1487–88.

The Western District of this court recently interpreted two preemption clauses, with essentially identical language, in the National Traffic and Motor Vehicle Safety Act of 1966, 15 U.S.C. §§ 1381 *et seq.* (Motor Vehicle

---

1. Defendants argue that there is a third provision which relates to preemption, 42 U.S.C.A. § 5422(a) (1983). However, this provision relates to jurisdiction in a case where no federal standard exists. It does not speak to the case where, as here, a federal standard has been issued.

Act). Section 1392(d) of the Motor Vehicle Act provided:

> Whenever a Federal motor vehicle safety standard ... is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle ... any safety standard applicable to the same aspect of performance of such vehicle ... which is not identical to the Federal Standard.

*Loulos v. Dick Smith Ford, Inc.*, 882 S.W.2d 149, 150 (Mo.App.W.D.1994). Section 1397(k) of the Motor Vehicle Act provided:

> Compliance with any Federal motor vehicle safety standard ... does not exempt any person from any liability under common law.

*Id.*

The *Loulos* court found that the latter clause made it unmistakably clear that Congress did not wish to preempt common law damage suits. *Loulos*, 882 S.W.2d at 151–52. The United States Supreme Court recently affirmed the Eleventh Circuit's decision, relied upon by *Loulos*, that these two clauses of the Motor Vehicle Act, read together, do not expressly preempt state common law claims. *Freightliner Corporation v. Myrick*, —— U.S. ——, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995), *affirming Myrick v. Freuhauf Corp.*, 13 F.3d 1516 (11th Cir.1994).

A federal district court reached the same result with respect to the instant Manufactured Home Act and the formaldehyde regulations. In *Shorter v. Champion Home Builders Co.*, 776 F.Supp. 333 (N.D. Ohio 1991), the court found: "Thus, while the state of Ohio may not institute its own safety standards, state law claims may still be brought." *Id.* at 338. We believe that the *Shorter* court's holding best reconciles the two preemption clauses at issue. The first preemption clause prohibits state "standards," which we interpret to mean legislative or administrative standards, while the second clearly leaves the common law unaffected.

Defendants cite four principal cases in opposition to the *Shorter* and *Loulos* result. *Woolridge v. Redman Homes, Inc.*, 792 F.Supp. 1469 (N.D.Tex.1991), is inapplicable. *Woolridge* found that a Texas act explicitly adopted the federal standards, and thus there was no conflict with state law. *Id.* at 1471. Therefore, *Woolridge* did not reach the question of what would happen had state law differed from the federal law. *Liberty Homes, Inc. v. Department of Indus., Labor & Human Relations*, 125 Wis.2d 492, 374 N.W.2d 142, 153 (App.1985), *aff'd.*, 136 Wis.2d 368, 401 N.W.2d 805 (1987), and *Scurlock v. City of Lynn Haven, Fla.*, 858 F.2d 1521 (11th Cir.1988), are inapposite because they addressed the preemptive effect of the Manufactured Home Act upon state and local regulations, rather than the effect upon state common law, which is the question at hand.

■ *Macmillan v. Redman Homes, Inc.*, 818 S.W.2d 87 (Tex.App.1991), is founded upon the erroneous assumption that the Manufactured Home Act itself provides a remedy to injured plaintiffs: "The act preempts only those state standards that differ from federal standards, and we are not prepared to say that Congress meant to keep an injured party from bringing a tort suit that alleges a violation of the federal standards themselves." *Id.* at 94. If, in fact, it were the case that the Manufactured Home Act provided a new remedy for injured plaintiffs, one could raise a strong argument in favor of preemption.

Contrary to *Macmillan*, *Heuer v. Forest Hill State Bank*, 728 F.Supp. 1199 (D.Md. 1989), *aff'd.*, 894 F.2d 402 (4th Cir.1990), suggests that the Manufactured Home Act provides no remedy to injured plaintiffs: "the statute relied upon, 42 U.S.C. §§ 5401–5425 (1982 and Supp. IV 1986), does not create, expressly or impliedly, any private right of action." *Heuer*, 728 F.Supp. at 1200. It is to be noted that Section 613(c) of the Senate version of the Act would have given injured owners a right to sue for violations of the federal standards. 1974 U.S.Code Cong. & Admin.News at 4273, 4412. The fact that this provision was omitted from the final version persuades us that the Act carries no private right of action.

The fact that the Manufactured Home Act provides no alternative cause of action for a plaintiff injured by formaldehyde exposure is

an additional stimulus to reason that it does not preempt state common law: "It is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct." *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 251, 104 S.Ct. 615, 623, 78 L.Ed.2d 443 (1984). Absent strong evidence to the contrary we will not presume that Congress intended this safety legislation to deprive injured persons of all remedies.

We do not find an implied preemption because state common law does not conflict with the purposes of the Act or render compliance impossible. *See Freightliner, supra,* at ——, 115 S.Ct. at 1488. The *Shorter* court expressly recognized this:

> The purpose of the [Act], as set out in 42 U.S.C. § 5401, reads: "to reduce the number of personal injuries and deaths and the amount of insurance costs and property damage resulting from manufactured home accidents and to improve the quality and durability of manufactured homes." The Court cannot find, nor has Champion Home offered, any evidence in the legislative history of the Act that would suggest that a state law claim would frustrate the intent of Congress in reducing personal injuries in mobile homes. If anything, the availability of additional state law claims may serve to further reduce the number of personal injuries. *See Larsen v. GM Corp.*, 391 F.2d 495, 506 (8th Cir.1968).

*Shorter,* 776 F.Supp. at 338. The common law is in perfect accord with the Act's stated purpose to increase safety. The federal statute does not prohibit manufacturers of materials from exceeding its standards, which may be necessary in some cases to prevent harm to individuals. This reality poses no irreconcilable conflict. *Bennett v. Mallinckrodt, Inc.,* 698 S.W.2d 854, 859–60 (Mo.App. E.D.1985) (compliance with federal radiation emissions standard not in conflict with payment of state law damage claim).

We are convinced that defendants are "not exempt" from "any liability under common law." 42 U.S.C.A. 5409(c). The cause of action against defendants for product liability was recognized at common law, *see McLeod v. Linde Air Products Co.,* 1 S.W.2d 122 (Mo.1927), and a finding of liability against defendants would not undermine any federal objectives or purposes with respect to the Act. Therefore, the lower court erred in granting defendants' motion to dismiss.

Judgment reversed and remanded.

SMITH, P.J., and WHITE, J., concur.