SHORES, Justice.
This case concerns whether the regulations and requirements of the Department of Housing and Urban Development (“HUD”) preempt the plaintiffs state law tort claims alleging injury as a result of the faulty design and manufacture of a mobile home. The trial court held that 24 C.F.R. § 3282.11 preempts all claims by the plaintiff and en *62 tered a summary judgment for the defendant, PFS Corporation. We reverse and remand.
The plaintiff, Kenneth B. Turner, was employed as a transit truck driver with Mays Enterprises. On April 7, 1987, he was rendered a paraplegic by personal injuries he sustained when the semi-tractor and manufactured home he was driving failed to stop and he ran into a culvert. The manufactured home was equipped with five axles, but only one was a braking axle. Turner sued PFS Corporation, which was licensed by HUD as a “design approval plant inspection agency” (“DAPIA”) and as an “in-plant inspection agency” (“IPIA”) to ensure that manufacturers complied with rules and regulations promulgated by HUD. Turner alleged that in approving the braking design of the subject manufactured home, PFS Corporation had acted negligently and/or wantonly and had violated HUD standards and good engineering practices.

A. Preemption

The HUD regulations at issue were promulgated pursuant to the National Manufactured Housing Construction and Safety Standards Act of 1974, 42 U.S.C. §§ 5401-5426 (NMHCSSA). The trial court agreed with the defendant PFS that the federal law preempts Turner’s state law tort claims. Considering both the NMHCSSA and the HUD regulations, we hold that Turner’s claims are not preempted.
Preemption is the exception to the general rule that federal law does not displace existing state law. Congress must clearly manifest a purpose to supersede the common law of the states for preemption to apply. Cipollone v. Liggett Group, Inc., 505 U.S. 504, 515, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992). When Congress enacts an explicit provision on preemption and that provision supplies a “ ‘reliable indicium of congressional intent with respect to state authority,’ ... ‘there is no need to infer congressional intent to pre-empt state laws from the substantive provisions’ of the legislation.” Cipollone, 505 U.S. at 517, 112 S.Ct. at 2618 (citations omitted). In those circumstances, a court “need only identify the domain expressly pre-empted” by that provision. Id.
The express provision in the NMHCSSA, along with the explicit HUD regulation, defines the preemptive reach of federal regulation. See Scurlock v. City of Lynn Haven, Fla., 858 F.2d 1521, 1523 (11th Cir.1988) (holding a city ordinance preempted by 24 C.F.R. § 3282.11); Woolridge v. Redman Homes, Inc., 792 F.Supp. 1469 (N.D.Tex.1991); Shorter v. Champion Home Builders Co., 776 F.Supp. 333 (N.D.Ohio 1991). Section 5403(d) of the NMHCSSA provides:
“Whenever a Federal manufactured home construction and safety standard established under this chapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any manufactured home covered, any standard regarding the construction or safety applicable to the same aspect of performance of such manufactured home which is not identical to the Federal manufactured home construction and safety'standard.”
Turner has put forth no allegations, arguments, or evidence concerning any state standards regarding manufactured homes. His claims are founded in tort, but the claims are based on the theory that PFS Corporation negligently and/or wantonly failed to comply with the federal HUD standards. He does not attempt to place greater safety requirements upon PFS Corporation than those imposed under the federal regulations. Rather, his claims assert a failure to comply with the federal standards themselves.
Significantly, § 5409(c) of the NMHCSSA provides that “[cjompliance with any Federal manufactured home construction or safety standard issued under this chapter does not exempt any person from any liability under common law.” Read together, this section and § 5403(d) “preempt state law standards, but do not preempt most state law claims.” Shorter v. Champion Home Builders Co., 776 F.Supp. at 337-38. See also Mizner v. North River Homes, 913 S.W.2d 23 (Mo.App.1995) (finding no preemption of common law claims by the NMHCSSA).
*63 The test for determining whether Turner’s specific claims are preempted can be found in the preemption regulation[1] at issue here, 24 C.F.R. § 3282.11,[2] which, at the time of the events involved in this case, read as follows:
“(a) No state manufactured home standard regarding manufactured home construction and safety which covers aspects of the manufactured home governed by the Federal standards shall be established or continue in effect with respect to manufactured homes subject to the Federal standards and these regulations unless it is identical to the Federal standards.
[[Image here]]
“(e) No State or locality may establish or enforce any rule or regulation or take any action that stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.. The test of whether a State rule or action is valid or must give way is whether the State rule can he enforced or the action taken without impairing the Federal superintendence of the manufactured home industry as established by the Act.”[3]
(Emphasis added.) The regulation can be understood t.o address common law rules as well as legislative rules. See Cipollone v. Liggett Group, 505 U.S. 504, 521-22, 112 S.Ct. 2608, 2620, 120 L.Ed.2d 407 (1992) (preemption of state “requirements or prohibitions” includes common law claims). Turner’s claims are not preempted, however, because enforcing the federal standards through state tort law does not frustrate federal supervision of the industry.[4] The availability of tort claims may serve to increase compliance by the industry. Thus, only claims that impose different state standards are preempted. See also Woolridge v. Redman Homes, Inc., 792 F.Supp. 1469 (N.D.Tex.1991) (no preemption under NMHCSSA of identical state standards).

B. The Summary Judgment Standard

Rule 56, A.R.Civ.P., sets forth a two-tiered standard for determining whether to enter a summary judgment. In order to enter a summary judgment, the trial court must determine: 1) that there is no genuine issue of material fact, and 2) that the moving party is entitled to a judgment as a matter of law. In determining whether a summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant. See Turner v. Systems Fuel, Inc., 475 So.2d 539, 541 (Ala.1985); Ryan v. Charles Townsend Ford, Inc., 409 So.2d 784 (Ala.1981).
Rule 56 is read in conjunction with the “substantial evidence rule” (§ 12-21-12, Ala.Code 1975), for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). To defeat a properly supported motion for summary judgment, the opposing party must present “substantial evidence,” i.e., “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
The purpose of the NMHCSSA is to ensure manufactured home safety, including safety during transportation of manufactured homes. Scurlock v. City of Lynn Haven, Fla., 858 F.2d 1521, 1524 (11th Cir.1988) *64 (citing 42 U.S.C. § 5401). To accomplish this goal, HUD promulgated 24 C.F.R. §§ 3280-3282, applicable to builders of manufactured homes. To sell and transport a manufactured home within the United States, the manufacturer must have on the home a HUD label certifying compliance with the fedei’al standards. Such a label may be affixed to a manufactured home only if the design is approved by a DAPIA.
In this case, PFS Corporation, a HUD-lieensed DAPIA, reviewed and approved — as in compliance — the design of the manufactured home involved in the accident that resulted in Turner’s injuries. The braking system in this design included only one braking axle on the manufactured home. The defendant PFS’s approval of the design was based solely upon a one-paragraph transportation letter written by the manufacturer, Mays Enterprises. Turner alleged that this design failed to comply with the federal standards and that PFS had negligently or wantonly certified this design, which he alleges caused his injuries. The trial court held that HUD regulations required PFS to accept this one-paragraph letter [5] as “documented evidence” proving compliance with the HUD safety standards, and it accordingly entered a summary judgment.
In opposing the defendant’s summary judgment motion, Turner submitted the affidavit of engineer Harry Edmondson. Edmondson stated his opinion that PFS, in basing its approval of the one-braking-axle design on nothing but this short letter from the manufacturer, had breached its duty to ensure compliance. Federal standards regarding the adequacy of the braking system are set forth in 24 C.F.R. § 3280.904(a) and (b)(9):
§ 3280.904(a):
“In operation, the transportation system (supporting the manufactured home structure and its contents) shall effectively respond to the control of the braking, while traveling at applicable towing vehicle in terms of tracking and highway speeds and in normal highway traffic conditions [sic].”
§ 3280.904(b)(9):
“Brake assemblies, (i) The number, type, size and design of brake assemblies required to assist the towing vehicle in providing effective control and stopping of the manufactured home shall be determined and documented by engineering analysis. Those alternatives listed in § 3280.903(c) may be accepted in place of such an analysis.”
Section 3280.903(e)(2) provides that “acceptable documented evidence of actual transportation experience” may be accepted in place of the engineering analysis. The standards do not prohibit the DAPIA from inquiring further into the effectiveness of the system, contrary to PFS’s contention that it legally could do no more to ensure the safety of the design. Additionally, for a DAPIA to approve a system using one braking axle, § 3280.904(a) requires that that braking axle be effective under normal conditions.
For interpreting § 3280.903(c)(2) and § 3280.904(b)(9), paragraphs A and E of HUD’s interpretative bulletin provide:
Paragraph A, regarding § 3280.903(c)(2):
“Documented evidence such as service records or other documents certified to by duly authorized personnel of the manufacturer is acceptable for compliance with this section when failures related to chassis damage ... and body failure due to transportation loading do not exceed 1% of the total number of units (‘Floors’) transported up on that chassis. Latent damage failures ... resulting from primary or secondary movement, which are not related to improper siting or leveling of the mobile home or loading in excess of the manufacturer’s recommendations during trans *65 port of the mobile home, shall be included in determining the 1% maximum failure level. If the manufacturer does not have or cannot provide actual records of latent damage history, the manufacturer shall provide a testament that, to the manufacturer’s knoioledge, no latent damage has occurred as a result of transportation. [Emphasis added.]”
Paragraph E, regarding § 3280.904(b)(9):
“Unless substantiated in the design to the satisfaction of the approval agency by either engineering analysis or those alternatives listed in 3280.903(c)(1) and (2), there shall be a minimum of two axles equipped with brake assemblies on each . mobile home floor or unit. Whenever tests are used to verify the adequacy of the combined braking performance of the towing vehicle and the mobile home, the combined braking system shall be capable of assuring that the maximum stopping distance from an initial velocity of 20 mph does not exceed 40 feet. The stopping distance shall be measured from the point at which movement of the service brake pedal or control begins. [Emphasis added.]”
This bulletin makes it clear that the DAPIA still has discretion to require more than a self-serving statement by the manufacturer concerning compliance with federal safety standards. In no way is the requirement of effective braking under normal conditions changed by this bulletin.
In this case, the letter stated that service and repair records were available for inspection. PFS, however, apparently did not seek access to these records. Further, the letter itself did not substantiate that the braking system could stop the manufactured home safely under normal conditions.
Contrary to the allegations of the defendant, the standards and the bulletin required more than one braking axle unless the DA-PIA could ascertain that the design could effectively respond to braking under normal conditions without two braking axles. The availability of the letter option for the manufacturer does not require the DAPIA to look no further into the safety of the design. Rather, the bulletin and the standards indicate that engineering analysis need not be repeated where the manufacturer can substantiate that such an analysis is unnecessary. The analysis would be unnecessary only if the design could be shown to comply with safety standards.
Turner’s expert attested that the braking capacity of the manufactured home in question was one-seventh of that of an automobile, one-fifth of that of a tractor trailer, and one-fourth of what is required to operate vehicles on Alabama highways. The letter upon which PFS relied in approving the design did not substantiate the effectiveness of the braking system. Turner presented substantial evidence that would allow the inference that the braking system was in fact unsafe and that PFS had not satisfied its duty to ensure compliance with HUD safety regulations. PFS was not entitled to a summary judgment. Turner must be permitted to prove the claims.
We therefore hold (1) that Turner’s state tort claims are not preempted, and (2) that his allegations of negligence or wantonness raise factual questions within the province of a jury.
REVERSED AND REMANDED.
ALMON, INGRAM, COOK, and BUTTS, JJ., concur.
MADDOX, J., dissents.

. Federal administrative regulations have the same preemptive effect as federal statutes. Fidelity Federal Savings & Loan Association v. de la Cuesta, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982).

. Paragraph (c) of § 3282.11 states in part that "[n]o state may establish or keep in effect through a building code enforcement system or otherwise, procedures or requirements which constitute systems for enforcement of the Federal standards or of identical State standards which are outside the system established in these regulations or which go beyond this system to require remedial actions which are not required by the Act and these regulations.” Paragraph (c) concerns the state's role as a HUD-licensed approval agency for enforcement of the NMHCSSA; therefore, this paragraph does not refer to state law tort actions.

. Because of amendments made in 1991, this paragraph (e) now appears as paragraph (d).

. The NMHCSSA provides no remedies sufficient to compensate a seriously injured person. See § 5410.

. The letter stated:
"This is to certify that all mobile homes manufactured by this company and submitted to [PFS] for approval have been subjected to transportation experience since starting date of Oct. 1984. The chassis system incorporated in the construction manual has not experienced lated damage to structural, plumbing, mechanical, or electrical systems that would exceed the 1% maximum allowance as allowed in section 3280.903 of the standards. Documented evidence of service and repair records are available for inspection.”