Christine DELAHUNT, Plaintiff,

v.

CYTODYNE TECHNOLOGIES,
et al., Defendants.

No. 02–CV–314.

United States District Court,
S.D. Ohio,
Eastern Division.

Jan. 24, 2003.

John T. Murray, Barbara Quinn Smith, Murray & Murray, Sandusky, OH, Joseph F. Murray, Murray Murphy Moul & Basil, Columbus, OH, for Plaintiff Christine Delahunt.

Chad A. Readler, Jones Day Reavis & Pogue, Columbus, OH, for Defendant Cytodyne Technologies.

Felix John Gora, Rendigs Fry Kiely & Dennis LLP, Cincinnati, OH, for Defendant GNC Franchising Inc, c.o CSC Lawyers Incorporating Service General Nutrition Companies.

## OPINION AND ORDER

MARBLEY, District Judge.

### I. INTRODUCTION

This matter is before the Court on the Defendants' Motions to Dismiss the Plaintiff's Complaint or, Alternatively, to Strike the Plaintiff's Class Action Allegations. In this matter, the Plaintiff, Christine Delahunt, asserts ten claims against the Defendants, Cytodyne Technologies ("Cytodyne") and General Nutrition Corporation, improperly designated by the Plaintiff as General Nutrition Companies, Inc. and GNC Franchising, Inc. ("GNC"). Ms. Delahunt asserts five claims on behalf of a putative class and five claims in her individual capacity. Cytodyne filed a Motion to Dismiss the Plaintiff's Complaint or, Alternatively, to Strike the Plaintiff's Class Action Allegations. GNC then filed a Motion to Dismiss in which it adopted *in toto* Cytodyne's Motion to Dismiss.

For the following reasons, the Court **GRANTS** the Defendants' Motions to Dismiss in part, and **DENIES** the Defendants' Motions in part.

### II. BACKGROUND

The following facts are set forth in the Plaintiff's Complaint.

Defendant Cytodyne manufactures the dietary supplement known as Xenadrine RFA–1 and sells that product directly to consumers. Defendant GNC sells Xenadrine RFA–1 at retail outlets throughout the United States.

Xenadrine RFA–1 is marketed to the public as a "Workout Enhancer" and as a "Clinically Proven Fat Loss Catalyst." On the label affixed to the product, Cytodyne claims that "Xenadrine's phenomenal fat-burning, muscle-sparing benefits can help you lose body-fat, increase your strength and energy, and produce visible improvements in muscle tone within just weeks of use."

The label affixed to the product indicates that Xenadrine RFA–1 contains, among other ingredients, ma huang, standardized to 20mg of ephedrine, and guarana extract, standardized to 200mg of caffeine. Ephedrine is a naturally occurring substance that is derived from the Chinese herb ma huang. The Plaintiff claims that when ephedrine is extracted from ma huang, one has little or no control over the amount of ephedrine obtained. As of February 2001, the Food and Drug Administration ("FDA") received 1398 Adverse Event Reports ("AERs") that related to the use of ephedrine, accounting for forty-two percent of all AERs. Those AERs

included reports of eighty-one deaths, accounting for fifty-nine percent of all reported deaths resulting from dietary supplements. The Plaintiff asserts that FDA-reported incidents resulting from ephedrine include rapid and irregular heart rhythms, increased blood pressure, chest pain, anxiety, nervousness, tremor, hyperactivity, insomnia, and death.

On April 25, 2000, Ms. Delahunt purchased a Cytodyne-manufactured bottle of Xenadrine RFA–1 at a GNC retail outlet. The label on the product purchased by Ms. Delahunt indicated that, if the product was intended to be used as an energy booster, two capsules should be taken approximately thirty minutes prior to exercise. If the product was intended to be used for weight loss, two capsules should be taken prior to breakfast or morning exercise, and two more capsules should be taken at mid-afternoon. The label also stated that one-half the recommended dose should be taken during the first seven days if the product was to be used for weight loss so that the user might assess her tolerance for the product.

Ms. Delahunt took one tablet per day from April 25, 2000 until June 20, 2000, with the exception of a continuous two-week period during which she stopped using the product. Beginning on June 21, 2000, Ms. Delahunt took two capsules per day for a few days before decreasing her dosage to one capsule per day.

On June 28, 2000, Ms. Delahunt was hospitalized in Erie County, Ohio after suffering an "acute psychotic break." She also suffered a seizure upon her admittance to the hospital. Ms. Delahunt alleges that her psychosis and seizure were caused by Xenadrine RFA–1, and the ephedrine contained therein.

Based on the foregoing, Ms. Delahunt filed a Complaint with this Court on April 3, 2002. In her Complaint, she asserts five claims on behalf of herself and a putative class, along with five claims that she asserts in her individual capacity. In particular, Ms. Delahunt purports to represent a class consisting of "all persons and entities who purchased Xenadrine RFA–1 from Defendants during the period April 1, 1998 to the present," excluding the Defendants, members of their Boards of Directors, and their employees. On behalf of that class, Ms. Delahunt asserts the following causes of action: (1) violation of Ohio's Consumer Sales Practices Act; (2) violation of the unfair trade practices acts of all fifty states and the District of Columbia; (3) fraud; (4) negligent misrepresentation; and (5) unjust enrichment. The class claims are based on the allegation that the putative class members "placed themselves at risk of harm" by taking Xenadrine RFA–1, and purchased a product that was not accurately described on its label. In addition, Ms. Delahunt asserts the following causes of action in her individual capacity: (1) products liability—defective design or formulation; (2) products liability—defect due to inadequate warning or instruction; (3) products liability—defect due to inadequate post-marketing warning or instruction; (4) negligence; and (5) breach of warranty. This matter is now before the Court on the Defendants' Motions to Dismiss Plaintiff's Complaint or, in the Alternative, to Strike the Plaintiff's Class Allegations.

### III. STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss, this Court is limited to evaluating whether a plaintiff's complaint sets forth allegations sufficient to make out the elements of a cause of action. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir. 1983). Under limited circumstances, however, a court may rely on documents outside the pleadings, if those documents

"simply [fill] in the contours and details of the plaintiff's complaint, and [add] nothing new," without converting the motion to dismiss into a motion for summary judgment. *Yeary v. Goodwill Indus.—Knoxville, Inc.,* 107 F.3d 443, 445 (6th Cir.1997).

A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 724 (6th Cir.1996). This Court must "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible ·inferences therein." *Lillard,* 76 F.3d at 724 (quoting *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir.1994)). While the complaint need not specify every detail of a plaintiff's claim, it must give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Gazette,* 41 F.3d at 1064. While liberal, this standard of review does require more than the bare assertion of legal conclusions. *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir.1993) (citation omitted). A complaint must contain either direct or inferential allegations with respect to all the material elements necessary to sustain a recovery under some viable legal theory. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 437 (6th Cir.1988).

## IV. ANALYSIS

### A. Class Claims: Absence of a Cognizable Injury

The Plaintiff brings four claims on behalf of a proposed class[1] that she defines as "all persons and entities who purchased Xenadrine RFA–1 from Defendants during the period April 1, 1998 to the present," excluding the Defendants, members of their Boards of Directors, and their employees. The Defendants argue that all of the class claims must be dismissed because the Complaint does not plead that any member of the proposed class suffered a cognizable injury as a result of having taken Xenadrine. Rather, the Complaint merely states that the putative class members placed themselves at "risk" of harm by purchasing the product. The Plaintiff does not allege that any of the class members realized this risk. The Defendants assert that such "no injury" class action claims have been rejected by the federal courts, and that the claims asserted on behalf of the proposed class should, therefore, be dismissed. *See In re Bridgestone/Firestone, Inc., Prods. Liab. Litig.,* 288 F.3d 1012, 1017 (7th Cir.2002) (recognizing that "[n]o injury, no tort, is an ingredient of every state's law"); *Briehl v. Gen. Motors Corp.,* 172 F.3d 623, 627–28 (8th Cir.1999) (upholding the district court's dismissal of a class action where the product was likely to fail, but had not actually failed so as to cause injury to the class members); *Willett v. Baxter Int'l, Inc.,* 929 F.2d 1094, 1099–1100 (5th Cir. 1991) (expressing "serious concerns" about allowing the plaintiffs, whose heart valves had not failed, to recover damages for their fear that the valves would fail where only seventeen out of over 19,000 similar valves had failed).

The Plaintiff attempts to distinguish the no-injury class actions relied on by the Defendants on the ground that, here, each class member, in fact, suffered an injury because of the misrepresentation of the

---

1. Although the Plaintiff's Complaint asserted five claims on behalf of the proposed class, in her Response to the Defendants' Motions to Dismiss, Ms. Delahunt indicated her intent to dismiss her claim for negligent misrepresentation.

true nature of the product at the time of sale. She claims that every class member suffered harm because they paid for a product that differed from what it was represented to be, and thereby incurred a financial injury equal to the amount they paid for the product.

### 1. Fraud

■ Plaintiff's argument regarding the injury incurred by members of the class she seeks to represent falls short with respect to her fraud claim. Indeed, while deciding the case on other grounds, the Seventh Circuit in *Bridgestone/Firestone* recognized that most jurisdictions would reject that very argument. In *Bridgestone/Firestone,* buyers and lessees of sport utility vehicles ("SUVs") that were equipped with tires that had an abnormally high failure rate, but who had not personally suffered tire failures, brought prospective class action claims against the tire manufacturer and the SUV manufacturer. The plaintiffs sought damages for the risk of failure, which they claim amounted to a diminished resale value of the vehicle, and mental distress. In considering the choice of law issue posed by a class comprised of individuals who purchased and used their vehicles in all fifty states, the District of Columbia, Puerto Rico, and other United States territories, the court addressed the issue of whether the proposed class action constituted a product liability case. The Seventh Circuit recognized that the plaintiffs

> describe[d] the injury as financial rather than physical and [sought] to move the suit out of the tort domain and into that of contract (the vehicle was not the flawless one described and thus is not merchantable, a warranty theory) and consumer fraud (on the theory that selling products with undisclosed attributes, and thus worth less than represented, is fraudulent).

*Bridgestone/Firestone,* 288 F.3d at 1017. The court determined that the plaintiffs could not classify their case as one of contract or fraud, rather than tort, through clever semantics because, "[i]f tort law fully compensates those who are physically injured, then any recoveries by those whose products function properly mean excess compensation." *Id.* The court explained the economics behind this statement in a footnote:

> Consider an example. Defendant sells 1,000 widgets for $10,000 apiece. If 1% of the widgets fail as the result of an avoidable defect, and each injury creates a loss of $50,000, then the group will experience 10 failures, and the injured buyers will be entitled to $500,000 in tort damages. That is full compensation for the entire loss; a manufacturer should not spend more than $500,000 to make the widgets safer.... Suppose, however, that uninjured buyers could collect damages on the theory that the risk of failure made each widget less valuable; had they known of the risk of injury, these buyers contend, they would have paid only $9,500 per widget—for the expected per-widget cost of injury is $500, and each buyer could have used the difference in price to purchase insurance.... On this theory the 990 uninjured buyers would collect a total of $495,000. The manufacturer's full outlay of $995,000 ($500,000 to the 10 injured buyers + $495,000 to the 990 uninjured buyers) would be nearly double the total loss created by the product's defect. This would both overcompensate buyers as a class and induce manufacturers to spend inefficiently much to reduce the risks of defects. A consistent system—$500 in damages to every buyer or $50,000 in damages to every injured buyer—creates both the right compensation and the right incen-

tives. A mixed system overcompensates buyers and leads to excess precautions. *Id.* at 1017 n. 1. Accordingly, the court concluded that most states would not entertain the theory pressed by the plaintiffs in that case. *Id.* at 1017 (citing cases from the Eighth, Third, Fifth, and Fourth Circuits, as well as from state courts in California, Alabama, Illinois, and Kentucky).

Like the plaintiffs in *Bridgestone/Firestone,* Ms. Delahunt brings a fraud claim on behalf of a proposed class that suffered no physical or psychological injuries as a result of their use of the product at issue, but allegedly suffered only financial harm as a result of having purchased a product that was not accurately described at the time of sale. But, as the *Bridgestone/Firestone* court explained, to allow such claims to proceed would be to eradicate the viability of the tort system by overcompensating buyers and creating inefficient incentives for manufacturers.

█ The Court notes that Ms. Delahunt has failed to cite any legal support for her position that the fraud claims she attempts to assert would be permitted by state law. She argues that the class members have suffered harm sufficient to maintain an action for fraud because they were induced to take an action that they would not have taken but for the Defendants' alleged misrepresentations, and they allegedly received something less valuable than what they bargained for as a result. An action for fraud, however, requires more. Under Ohio law, to maintain a claim of fraud, the plaintiff must plead:

"(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter

disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance."

*Cohen v. Lamko, Inc.,* 10 Ohio St.3d 167, 462 N.E.2d 407, 409 (1984) (quoting *Friedland v. Lipman,* 68 Ohio App.2d 255, 429 N.E.2d 456 (1980)). With respect to the proposed class, the Plaintiff has pled the first five elements. The problem lies, however, in the fact that she has failed to plead the final element—an injury proximately caused by the reliance. It is this absence of an injury above and beyond the reliance on the misrepresentation itself that is fatal to the fraud claims asserted on behalf of the class.

The Court recognizes that a class of plaintiffs may exist who, like Ms. Delahunt, allegedly relied on the misrepresentations or omissions on the label of Xenadrine RFA–1, and then suffered a cognizable injury as a result of their use of the product. At this point in the litigation, however, the Court will not presume that such a class exists.[2] Therefore, rather than redefining the class, the Court **GRANTS** the Defendants' Motions to Dismiss the Plaintiff's fraud claims brought on behalf of the class as currently defined.

### 2. Ohio's Consumer Sales Practices Act

█ The Court finds that the Plaintiff's argument regarding the financial harm incurred by the members of the proposed class has merit, however, with respect to her claims brought on behalf of the proposed class pursuant to Ohio's consumer

---

**2.** Of course, the Plaintiff may file an amended complaint seeking to represent a more nar-

rowly defined class if the Plaintiff determines that such a class, in fact, exists.

protection statutes. Ms. Delahunt alleges that the Defendants violated Ohio Rev. Code sections 1345.02 and 1345.03. Those provisions provide, in relevant part:

(A) No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.

(B) Without limiting the scope of division (A) of this section, the act or practice of a supplier in representing any of the following is deceptive:

. . .

(2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not. . . .

OHIO REV.CODE § 1345.02.

(A) No supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.

OHIO REV.CODE § 1345.03.

Pursuant to these provisions, Ohio Rev. Code § 1345.09 provides:

For a violation of Chapter 1345. of the Revised Code, a consumer has a cause of action and is entitled to relief as follows:

(A) Where the violation was an act prohibited by section 1345.02 or 1345.03 of the Revised Code, the consumer may, in an individual action, rescind the transaction or recover his damages.

OHIO REV.CODE § 1345.09.

In accordance with these provisions of the Ohio Consumer Sales Practices Act, Ms. Delahunt has brought claims on behalf of the proposed class alleging that:

Defendants engaged in unfair and/or deceptive acts or practices in connection with the sale of Xenadrine RFA–1 to Plaintiff and Class Members, including but not limited to, representing that the product was of a particular grade, standard, or quality, when it was not, by omitting material information concerning the product from the label affixed thereto, and by failing to warn Plaintiff and Class Members of the true dangers of ephedrine, [and that, through the same actions,] Defendants engaged in unconscionable acts or practices in connection with the sale of Xenadrine RFA–1 to Plaintiff and Class Members.

■ Unlike a fraud claim, where a plaintiff must allege harm above and beyond the misrepresentation and reliance thereon, a cause of action accrues under the Consumer Sales Practices Act as soon as the allegedly unfair or deceptive transaction occurs. *See Sproles v. Simpson Fence Co.,* 99 Ohio App.3d 72, 649 N.E.2d 1297, 1302 (1994) (recognizing that the allegedly deceptive transaction, not the injury that results from the transaction, starts the statute of limitations running). The plain language of section 1345.09, which indicates that plaintiffs must choose between the remedies of rescission and damages, indicates that it is the financial harm resulting from the unfair or deceptive transaction that the statute was intended to redress. As this Court has previously stated, per Judge Rice, "[t]he essence of the cause of action created by section 1345.09 is the unfair, deceptive, or unconscionable conduct undertaken in connection with a consumer transaction." *Pomianowski v. Merle Norman Cosmetics, Inc.,* 507 F.Supp. 435, 437 (S.D.Ohio 1980). Hence, the allegation that the Defendants engaged in unfair, deceptive, or unconscionable practices or acts in connection with the sale of Xenadrine RFA–1 indicates that the members of the proposed class

who purchased the product as a result of those practices or acts suffered a cognizable injury.

Therefore, the Court **DENIES** the Defendants' Motions to Dismiss the claims brought under the Ohio Consumer Sales Practices Act on behalf of the proposed class.

### 3. Unfair Trade Practices Act

In addition to bringing claims under Ohio Rev.Code sections 1345.02 and 1345.03 on behalf of the class, Ms. Delahunt also asserts class claims under every other state's unfair trade practices statute. Without much elaboration, she states that, as is the case under Ohio's law, injuries accrue under those statutes as soon as the unfair transaction takes place.

■ In light of the fact that the statutes alleged to have been violated generally prohibit unfair, deceptive, and fraudulent business practices in a manner similar to Ohio Rev.Code sections 1345.02 and 1345.03, the Court finds that the Plaintiff has asserted that the class members suffered injuries under those statutes by virtue of the fact that they purchased the product as a result of the Defendants' having engaged in such prohibited conduct. The Court notes that the Defendants have failed to specify any state statute that requires an injury above and beyond the financial harm that results from the allegedly illegal transaction itself.

Therefore, the Court **DENIES** the Defendants' Motions to Dismiss the claims brought on behalf of the proposed class pursuant to the unfair trade practices statutes of all fifty states and the District of Columbia for failure to assert a cognizable injury.

### 4. Unjust Enrichment

■ Finally, the Plaintiff asserts a claim of unjust enrichment on behalf of herself and the members of the proposed class.

Under Ohio law, a plaintiff is required to demonstrate three elements for a claim of unjust enrichment: (1) a benefit conferred by the plaintiff upon the defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *Reisenfeld & Co. v. Network Group, Inc.,* 277 F.3d 856, 860 (6th Cir.2002). The claim does not require the plaintiff to plead an injury in excess of the harm inherent in the defendant's retention of a benefit under unjust circumstances.

■ Here, the Plaintiff alleges that the proposed class members conferred a benefit upon the Defendants when they purchased Xenadrine RFA–1, that the Defendants were aware of that benefit, and that it was unjust for the Defendants to retain the benefit in light of the fact that the product purchased by the class members was not what it was purported to be. Accordingly, the Plaintiff has asserted claims on behalf of the proposed class members that meet all of the required elements for a claim of unjust enrichment.

Therefore, the Court **DENIES** the Defendants' Motions to Dismiss the unjust enrichment claims brought on behalf of the proposed class for failure to assert a cognizable injury.

The Defendants assert that, even if the class claims need not be dismissed based on the alleged failure of the members of the proposed class to assert a cognizable injury, the claims brought on behalf of the proposed class must be dismissed on other grounds. The Court proceeds to consider those arguments.

### B. Ohio Consumer Sales Practices Act

#### 1. Class Claims

On behalf of herself and the class she seeks to represent, Ms. Delahunt seeks a

refund under the Ohio Consumer Sales Practices Act ("Sales Act") of the full purchase price paid for Xenadrine RFA–1. She asserts that the Defendants engaged in unfair or deceptive acts or practices by representing that the product was of a particular grade, standard, or quality when it was not, by omitting material information relating to the product from the label affixed thereto, and by failing to warn the Plaintiff and the members of the proposed class of the true dangers of ephedrine.

The remedies provision of the Sales Act indicates that an individual claimant may seek to recover any actual damages incurred as a result of a defendant's violation of the statute. *See* OHIO REV.CODE § 1345.09(A). The provision also states, however, that a class action may not be asserted under the Sales Act unless the alleged conduct was publicly found to violate the Sales Act before the consumer transaction at issue. The statute states, in relevant part:

> Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02 or 1345.03 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code, the consumer may rescind the transaction or recover, but not in a class action, three times the amount of his actual damages or two hundred dollars, whichever is greater, or recover damages or other appropriate relief in a class action under Civil Rule 23, as amended.

OHIO REV.CODE § 1345.09(B); *see Deegan & McGarry v. Med–Cor, Inc.*, 125 Ohio App.3d 449, 708 N.E.2d 1029, 1031 (Ohio Ct.App.1998) (finding that certification of a class under Ohio Rev.Code section 1345.09(B) "signifies judicial recognition that the practice complained of has previously been determined to be a violation" of section 1345.02 or section 1345.03); *Amato v. Gen. Motors Corp.*, 11 Ohio App.3d 124, 463 N.E.2d 625, 632 (1982) (recognizing that a consumer class action is authorized only when the alleged act or practice was declared to be deceptive or unconscionable prior to the transaction on which the claim is based). In accordance of the requirements set forth in section 1345.09, section 1345.05(A)(3) compels the Ohio Attorney General to make available for public inspection all judgments and opinions by courts of Ohio "determining that specific acts or practices violate section 1345.02 or 1345.03 of the Revised Code." In addition, section 1345.05(B)(2) provides that the Ohio Director of Commerce may adopt rules that define with "reasonable specificity" acts or practices that violate sections 1345.02 and 1345.03.

■ For class certification to be proper, the prior decision or previously promulgated rule must have put the defendant on notice that the specific conduct at issue violated that Sales Act. *See Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 405 (6th Cir.1998) (finding class certification would not be proper where the two prior decisions relied on by the plaintiff involved behavior far more egregious than that committed by the defendant). The prior decision or rule need not, however, explicitly state that the precise conduct alleged violates the Sales Act for the decision or rule to put the defendant on notice. Indeed, a class action may proceed under the Sales Act when the defendant's conduct is alleged to violate a "general rule which reasonably tells potential actors ... what

they may not do." *Amato*, 463 N.E.2d at 632.

■ The Defendants assert that Ms. Delahunt's Complaint is defective on its face because it fails to plead that the Defendants' alleged conduct was ever declared to be deceptive or unconscionable by a rule promulgated by the Attorney General or by a decision of an Ohio court made available for public inspection prior to the transactions at issue. The Plaintiff, however, contends that the Defendants' alleged conduct was previously declared unlawful and deceptive. In particular, the Plaintiff states that the Defendants' alleged conduct constitutes a violation of Ohio Adm.Code section 109–4–3–10, which indicates that it shall be a deceptive act or practice for a supplier to make a representation "that would cause a reasonable consumer to believe such statements are true, unless at the time such representations ... are made, the supplier relies upon a reasonable basis in fact ... which substantiates such representations. . . ."

The Court finds that Ohio Adm.Code section 109–4–3–10 put the Defendants on notice that the conduct alleged by the Plaintiff, if proven true, violates the Sales Act. The label affixed to Xenadrine RFA–1 states, *inter alia*, that it contains only twenty milligrams of ephedrine. The Plaintiff, however, alleges that the labeling cannot be accurate, as it is impossible to determine the precise amount of ephedrine extracted from ma huang. If the Plaintiff is correct, the Defendants' act of affixing a misleading label to their product clearly constitutes making a misrepresentation that causes a reasonable consumer to believe such statement is true when there was no basis in fact to substantiate that representation. Hence, because the act or practice alleged by the Plaintiff has previously been declared to violate the Sales

Act, pursuit of this claim as a class is not improper.

Therefore, the Court **DENIES** the Defendants' Motions to Dismiss the Plaintiff's claims brought on behalf of the proposed class pursuant to Ohio Rev.Code sections 1345.02 and 1345.03 for failure to comply with the requirements of Ohio Rev.Code section 1345.09.

### 2. Unconscionability

In addition to asserting that the Defendants' acts or practices in connection with the sale of Xenadrine RFA–1 violated Ohio Rev.Code section 1345.02, the Plaintiff alleges that the Defendants' acts or practices violated section 1345.03 because they were unconscionable. The Defendants contend that, even if the class claims need not be dismissed under section 1345.09, the unconscionability portion of the Sales Act claim must be dismissed because the Plaintiff has not alleged that the Defendants possessed the mental state *required for an* action under Ohio Rev.Code section 1345.03.

■ Ohio Rev.Code section 1345.03 provides, in relevant part, that "[n]o supplier shall commit an unconscionable act or practice in connection with a consumer transaction." OHIO REV.CODE § 1345.03(A). To assert a violation of this provision, the plaintiff must allege that the defendant acted "knowingly." *See D & K Roofing, Inc. v. Pleso*, 77 Ohio App.3d 181, 601 N.E.2d 561, 563 (1991) (contrasting another provision of the Sales Act that does not require that the defendant act knowingly to the unconscionability provision); *Thomas v. Sun Furniture & Appliance Co.*, 61 Ohio App.2d 78, 399 N.E.2d 567, 569 (1978) (acknowledging that Ohio Rev.Code section 1345.03 explicitly requires that acts be done "knowingly").

Contrary to the Defendants' claim that the Plaintiff has not alleged that the De-

fendants possessed the required mental state for an action under Ohio Rev.Code section 1345.03, Ms. Delahunt's Complaint alleges that the Defendants acted "willfully, *knowingly*, intentionally, unconscionably, and with reckless indifference when it committed [the alleged] acts of consumer fraud" (emphasis added). Accordingly, Ms. Delahunt has alleged the intent necessary to state a claim under Ohio Rev.Code section 1345.03.

Therefore, the Court **DENIES** the Defendants' Motions to Dismiss the unconscionability portion of the Plaintiff's claim that the Defendants violated the Ohio Consumer Sales Practices Act.

### 3. Claims Outside Ohio

Finally, with respect to the Sales Act claim, the Defendants argue that the claim on behalf of the proposed class should be dismissed to the extent that it seeks to impose liability on the Defendants for sales of Xenadrine RFA–1 outside of Ohio. The Plaintiff has not responded to this argument, thereby conceding its merits.

 Ohio Rev.Code section 1345.04 states that:

The courts of common pleas, and municipal or county courts within their respective monetary jurisdiction, have jurisdiction over any supplier with respect to any act or practice in this state covered by sections 1345.01 to 1345.13 of the Revised Code, or with respect to any claim arising from a consumer transaction subject to such sections.

OHIO REV.CODE § 1345.04. The clause that specifies that courts have jurisdiction over claims related to acts or practices "in this state" indicates that "the statute is only applicable if the offending conduct took place within the territorial borders of the

state of Ohio." *Shorter v. Champion Home Builders Co.*, 776 F.Supp. 333, 338–39 (N.D.Ohio 1991). In *Shorter*, the court clarified that the determinative factor is whether the supplier's allegedly violative activity took place within Ohio. *Id.* at 339. Accordingly, the Sales Act claims asserted on behalf of proposed class members whose purchase of Xenadrine RFA–1 did not take place in Ohio are barred by the jurisdictional provision of the statute.

Therefore, the Court **GRANTS** the Defendants' Motions to Dismiss the class claims brought pursuant to the Ohio Consumer Sales Practices Act on behalf of class members who did not purchase Xenadrine RFA–1 within· the state of Ohio.

### C. Unfair Trade Practices Statutes and Fraud Claims: Insufficient Pleading

On behalf of herself and the proposed class, Ms. Delahunt pleads a single cause of action under fifty-one different unfair trade practices acts. In addition, she asserts a claim of common law fraud.[3] The Defendants assert that all of these claims should be dismissed for failure to plead them with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.

 Rule 9(b) requires that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED.R.CIV.P. 9(b). To satisfy this requirement, the plaintiff must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the Defendant; and the injury resulting from the fraud." *Coffey v. Foamex*, 2 F.3d 157, 161–62 (6th Cir.1993) (quoting *Ballan v.*

---

**3.** Although the Court is granting the Defendants' Motions to Dismiss the fraud claims brought on behalf of the proposed class for failure to allege a cognizable injury, Ms. Delahunt's fraud claim brought in her individual capacity has not been dismissed.

*Upjohn Co.*, 814 F.Supp. 1375, 1385 (W.D.Mich.1992) (internal citation omitted)). Rule 9(b) is to be read in conjunction with Rule 8(a), which requires that pleadings include "a short and plain statement of a claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a); *see Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir.1988) ("In ruling upon a motion to dismiss under Rule 9(b) for failure to plead fraud 'with particularity,' a court must factor in the policy of simplicity in pleading which the drafters of the Federal Rules codified in Rule 8.").

The Defendants contend that Ms. Delahunt's fraud and unfair trade practices claims must be dismissed because she has pled these claims far too generally to meet the requirements of Rule 9(b). In support of their position, they point out that she has neither cited the particular unfair trade practices statutes that the Defendants allegedly violated, nor has she pled the elements of those statutes. *See In re Gen. Motors Corp. Anti–Lock Brake Prods. Liab. Litig.*, 966 F.Supp. 1525, 1536 (E.D.Mo.1997) (recognizing that "[e]ach state's statute is unique and plaintiffs are required to plead the essential elements of each one"). In addition, the Defendants assert that Ms. Delahunt has failed to allege the manner in which the product label was either misleading or deceptive.

■ The Court finds that the Plaintiff's Complaint fully complies with the pleading requirements of Rule 9(b). First, Plaintiff manifests her intent to invoke the unfair trade practices statute of each state and the District of Columbia, as the Complaint states that "[a]ll fifty states and the District of Columbia have enacted statutes to protect consumers against unfair, deceptive, or fraudulent business practices, unfair competition, and false advertising." Although that language sufficiently puts the Defendants on notice of the claims against them, Ms. Delahunt clarified the statutory provisions upon which her Complaint is based in her Response to the Defendants' Motions to Dismiss. In a footnote, she set forth all fifty-one unfair trade practices statutes. Second, Ms. Delahunt clearly indicates the manner in which they violated these statutes by alleging that "[i]n violation of these statutes, Defendants made untrue, deceptive or misleading misrepresentations of material facts to, and omitted and/or concealed material facts from, Plaintiffs and Class Members through the label affixed to Xenadrine RFA–1." Her Complaint plainly claims that the Defendants violated the statutes by omitting material information from the label, and by misrepresenting the information that was printed.

The Court recognizes that, while each state's unfair trade practices statute generally prohibits unfair or deceptive practices or acts in connection with consumer transactions, the statutes may vary in certain procedural or substantive respects. *See In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir.2002) (recognizing that "[s]tate consumer-protection laws vary considerably, and courts must respect these differences"); Kimberly C. Cavanaugh, *It's a Lorax Kind of Market! But Is It a Sneetches Kind of Solution?*, 9 VILL. ENVTL. L.J. 133, 177–78 (1998) ("To help combat deceptive trade practices, most states have enacted their own versions of the [Federal Trade Commission Act].... The medley of state legislation varies both in scope and rigorousness."). Despite the fact that the variances in the states' laws may later prove to be an insurmountable obstacle to class certification, those differences do not lead to the conclusion that the unfair trade practices claims asserted on behalf of the proposed class must be dismissed for failure to plead a

violation of those statutes with particularity. At this stage in the litigation, it is not necessary for Ms. Delahunt to demonstrate that she will succeed on each claim. Rather, it is sufficient that she has pled with particularity the manner in which she alleges the Defendants violated the statutes upon which her Complaint is based.

Finally, with respect to her fraud claim, Ms. Delahunt has, in fact, alleged the manner in which the product label was misleading or deceptive, and has alleged further that the proposed class members read and relied on that misrepresentation. In particular, in paragraphs 71 through 78, Ms. Delahunt alleges: (1) that the label affixed to Xenadrine RFA–1 represented that the product contained twenty milligrams of ephedrine when, in actuality, it was impossible to control the exact amount of ephedrine contained in each product; (2) that the label affixed to the product purports to list all of the ingredients contained in the tablets when, in actuality, unlisted compounds were likely extracted from ma huang along with the ephedrine; (3) that the label failed to disclose the true dangers associated with taking ephedrine; (4) that Ms. Delahunt purchased Xenadrine RFA–1 in reliance on these misrepresentations and omissions; and (5) she would not have purchased the product had the label not contained such misrepresentations or omissions. There is little more that the Plaintiff could have alleged in her Complaint that would have clarified for the Defendants the basis of her fraud claim.

Therefore, the Court **DENIES** the Defendants' Motions to Dismiss the Plaintiff's fraud claim as well as the claim she brings on behalf of herself and the proposed class for violation of every state's unfair trade practices statute for failure to plead those claims with the particularity required by the Federal Rules of Civil Procedure.

### D. Negligent Misrepresentation

In her Response to the Defendants' Motions to Dismiss, Ms. Delahunt stated that she intends to withdraw her claim for negligent misrepresentation. She has not, however, withdrawn that claim as of yet. Based on her representation of an intent to do so, the Court **GRANTS** the Defendants' Motions to Dismiss the Plaintiff's claim for negligent misrepresentation.

### E. Unjust Enrichment

Ms. Delahunt asserts a claim under the equitable doctrine of unjust enrichment. One is unjustly enriched when "he has and retains money or benefits which in justice and equity belong to another." *Hummel v. Hummel,* 133 Ohio St. 520, 14 N.E.2d 923, 927 (1938). Recovery under unjust enrichment requires the Court to impose a quasi-contractual relationship upon the parties. *Id.* at 925–26. The Defendants argue that the Plaintiff's claim of unjust enrichment fails as a matter of law because an adequate legal remedy is available, which eliminates the availability of an equitable remedy.

The equitable claim of unjust enrichment fails when a legal remedy is available. *See Banks v. Nationwide Mut. Fire Ins. Co.,* No. 99AP–1413, 2000 WL–1742064, at *5 (Ohio Ct.App. Nov. 28, 2000) (acknowledging that "where damages are available for breach of contract or in tort, the [plaintiff] cannot also invoke the equitable remedy for unjust enrichment"); *Daup v. Tower Cellular, Inc.,* 136 Ohio App.3d 555, 737 N.E.2d 128, 138–39 (2000) (recognizing that the claim of unjust enrichment would not be available if an express contract existed between the parties). At this point in the litigation, however, it is unclear whether the Plaintiff is entitled to a legal remedy under the tort and contract theories she asserts in her Complaint. If, after further discovery, it becomes clear that she is not entitled to

recover damages under those theories, then she will be entitled to seek recovery pursuant to the unjust enrichment doctrine. *See Daup,* 737 N.E.2d at 139 (indicating that summary judgment to the defendant on a claim of unjust enrichment would only be proper if the court first determined that an express contract existed between the parties that afforded the plaintiff a legal basis for relief). As the case is currently postured, Ms. Delahunt is entitled to assert a claim of unjust enrichment as an alternative theory of relief should her pursuit of legal remedies fail.

Therefore, the Court **DENIES** the Defendants' Motions to Dismiss the Plaintiff's claim of unjust enrichment.

### F. Product Liability Claims

The Defendants assert that some of the claims asserted by Ms. Delahunt in her individual capacity must be dismissed on various grounds.[4]

#### 1. Ohio Products Liability Act

Effective January 5, 1988, Ohio product liability law was consolidated under the Ohio Products Liability Act ("OPLA"), Ohio Rev.Code section 2307.71 through section 2307.80. According to its terms, the OPLA applies to "[a]ny recovery of compensatory [or punitive] damages based on a product liability claim." Ohio Rev. Code § 2307.72(A), (B). A "product liability claim" is defined as a claim:

> that is asserted in a civil action and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to

property other than the product in question, that allegedly arose from any of the following:

(1) The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product;

(2) Any warning or instruction, or lack of warning or instruction, associated with that product;

(3) Any failure of that product to conform to any relevant representation or warranty.

Ohio Rev.Code § 2307.71(M). The Defendants contend that a number of the Plaintiff's claims must be dismissed as those claims displaced by the OPLA.

#### a. Breach of Express Warranty

First, the Defendants assert that Ms. Delahunt's claim for breach of express warranty is barred because the OPLA provides the exclusive remedy for that claim. *See White v. DePuy, Inc.,* 129 Ohio App.3d 472, 718 N.E.2d 450, 459 (Ohio Ct.App. 1998) (finding that OPLA codified claims for breach of express warranty).[5] Ms. Delahunt has conceded that this claim is preempted by the OPLA, and agrees not to pursue it at trial.

Therefore, the Court **GRANTS** the Defendants' Motions to Dismiss the Plaintiff's claim for breach of express warranty.

#### b. Inadequate Post–Marketing Warning

Second, the Defendants contend that Ms. Delahunt's claim for inadequate post-marketing warning must be dismissed because the OPLA provides the exclusive

---

4. The Defendants do not argue that Ms. Delahunt's product liability claim for defective design, set forth in her Sixth Cause of Action, should be dismissed.

5. The Defendants recognize that the breach of warranty claim need not be dismissed to the extent Ms. Delahunt asserts a breach of im-

plied warranty. *See Tompkin v. Am. Brands,* 219 F.3d 566, 576 (6th Cir.2000) (recognizing that Ohio courts have permitted claims for breach of implied breach of warranty, even when such claims were not asserted under the OPLA) (citations omitted).

remedy for that claim. *See* OHIO REV.CODE § 2307.76(A)(2) (recognizing a cause of action for inadequate post-marketing warning). The Defendants maintain that this claim should be dismissed and then re-pled under the OPLA. The Plaintiff, however, states that the claim for inadequate post-marketing warning is not barred by the OPLA, but, rather, is specifically authorized by that statute. She also points out that she has pled the elements of the statute virtually word for word.[6]

Although the Plaintiff is correct that her claim for inadequate post-marketing warning is authorized by the OPLA, the claim should be pled pursuant to that statute. *See White*, 718 N.E.2d at 454 n. 2 (requiring the parties to resubmit briefing when neither party had applied the OPLA to product liability claims). Therefore, the Court **GRANTS** the Defendants' Motions to Dismiss the Plaintiff's claim for inadequate post-marketing warning, and dismisses the claim **WITHOUT PREJUDICE** so that the Plaintiff may amend her Complaint to clarify that the claim is brought pursuant to Ohio Rev.Code section 2307.76.

### c. Negligence

Third, the Defendants assert that Ms. Delahunt's negligence claim, set forth in her Ninth Cause of Action, must be dismissed to the extent that she asserts anything other than a claim for negligent design, which is already alleged in her Sixth Cause of Action. They state that, like the claims for inadequate post-marketing warning and breach of express warranty, common law negligence claims are preempted by the OPLA. *See Tompkin,*

219 F.3d at 575 (recognizing that the Sixth Circuit has implicitly concluded that common law negligence claims are preempted by OPLA, even though Ohio courts allow plaintiffs to pursue common law claims for negligent design).

The Plaintiff claims that common law negligence claims are preempted only to the extent they are specifically covered by the OPLA. *See Carrel v. Allied Prods. Corp.,* 78 Ohio St.3d 284, 677 N.E.2d 795, 800 (1997) (stating that " 'all common-law products liability causes of action survive the enactment of [the OPLA], unless *specifically* covered by the Act") (quoting *Byers v. Consol. Aluminum Corp.,* 73 Ohio St.3d 51, 652 N.E.2d 643, 644 (1995) (Douglas, J., dissenting)). She contends that the portion of her negligence claim premised on her assertion that Cytodyne promoted the use of Xenadrine RFA–1 in a fraudulent manner, despite having evidence of its dangerousness, it not preempted, and therefore should not be dismissed, because no provision of the OPLA would cover this claim.

■■ The Court finds that Ms. Delahunt's negligence claim is preempted by the OPLA. Ms. Delahunt may be correct that common law claims are preempted only to the extent that they are specifically covered by the Act. She is incorrect, however, when she states that no provision of the OPLA applies to her negligence claim. The essence of the negligence claim is that the Defendant fraudulently marketed its product by misrepresenting its dangerousness. This claim may be covered by any one of three provisions of the OPLA, including two provisions that are already

---

**6.** In an attempt to avoid further confusion with respect to the product liability claims brought by the Plaintiff in her individual capacity, she clarifies in her Response to the Defendants' Motions to Dismiss that her claim for negligent design is brought pursuant to Ohio Rev.Code section 2307.75, and her claim for inadequate warning is brought pursuant to Ohio Rev.Code section 2307.76. In the interest of clarity, the Plaintiff may wish to amend her Complaint to reflect the same.

asserted as causes of action by the Plaintiff. In particular, the claim may be construed as a claim for negligent design, already set forth by the Plaintiff in her Sixth Cause of Action, and brought pursuant to Ohio Rev.Code section 2307.75. In the alternative, the claim may be construed as a claim for inadequate warning, already set forth by the Plaintiff in her Seventh Cause of Action, and asserted under Ohio Rev.Code section 2307.76. Finally, the claim may be covered by Ohio Rev.Code section 2307.77, which states that a "product is defective if it did not conform, when it left the control of its manufacturer, to a representation made by that manufacturer."[7] Because the negligence claim is covered by these provisions, that claim is displaced by the OPLA, and must be pled pursuant to the statute.

Therefore, the Court **GRANTS** the Defendants' Motions to Dismiss the Plaintiff's negligence claim, and dismisses that claim **WITHOUT PREJUDICE** so that the Plaintiff may amend her Complaint to bring the claim under the proper statutory provision.

#### 2. Inadequate Warning

Finally, the Defendants argue that Ms. Delahunt's claim for inadequate warning, asserted in her Seventh Cause of Action, should be dismissed because Ms. Delahunt has not alleged that the Defendants "failed to take precautions that a reasonable person would take in presenting the product to the public." *Crislip v. TCH Liquidating Co.*, 52 Ohio St.3d 251, 556 N.E.2d 1177, 1182–83 (1990).

■ Contrary to the Defendants' assertion, the Plaintiff's Complaint states, at paragraph 100, that "Defendant Cytodyne Technologies knew, or, in the exercise of reasonable care, should have known about the risks associated with ephedrine, but failed to provide the warning that a manufacturer exercising reasonable care would have provided concerning the risk, in light of the likelihood that the product would cause harm of the type suffered by Plaintiff and in light of the likely seriousness of that harm." Although couched in slightly different terms than those utilized in *Crislip*, the language of the Plaintiff's Complaint put the Defendants on notice that she was asserting a claim of inadequate warning, and was alleging all of the necessary elements of that claim.

Therefore, the Court **DENIES** the Defendants' Motions to Dismiss the Plaintiff's claim for inadequate warning.

### V. CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** the Defendants' Motions to Dismiss with respect to the following claims: (1) the negligent misrepresentation claim brought on behalf of the Plaintiff and the proposed class; (2) the fraud claims brought on behalf of the proposed class; (3) the Ohio Consumer Sales Practices Act claims brought on behalf of proposed class members who purchased their Xenadrine RFA–1 outside of the state of Ohio; (4) the breach of express warranty claim brought by the Plaintiff in her individual capacity; (5) the inadequate postmarketing warning claim brought by the

---

**7.** The Court recognizes that Ms. Delahunt may not be able to pursue her claim under Ohio Rev.Code section 2307.77 as courts have interpreted that provision to require an affirmative misrepresentation by the defendant. *See White*, 718 N.E.2d at 459 (holding that, without an express representation about the product, the defendant could not be liable for a product defect based on a misrepresentation). Here, however, Ms. Delahunt seems to assert not that the Defendant acted fraudulently by making an affirmative misrepresentation, but that the Defendant acted fraudulently by omitting certain relevant information about its product.

Plaintiff in her individual capacity; and (6) the negligence claim brought by the Plaintiff in her individual capacity.

The Court **DENIES** the Defendants' Motions to Dismiss with respect to the following claims: (1) the Ohio Sales Practices Act claims, including the unconscionability claim, brought on behalf of the Plaintiff and the proposed class members who purchased their Xenadrine RFA–1 within the state of Ohio; (2) the claims brought on behalf of the Plaintiff and the proposed class members for violation of fifty-one unfair trade practices statutes; (3) the unjust enrichment claim brought on behalf of the Plaintiff and the proposed class; (4) the fraud claim asserted on behalf of the Plaintiff; and (5) the inadequate warning claim brought on behalf of the Plaintiff in her individual capacity.[8]

**IT IS SO ORDERED.**

---

**8.** At this point in the litigation, the Court expresses no opinion as to whether certifica- tion of the proposed class would be proper.